Return To:
Records Processing Services
577 Lamont Road
Elmhurst, IL 60126

DOC#: 57732 BK:25466 Pg: 23

07 OCT 15 PM 12:49

# MORTGAGE

☐ IF CHECKED, THIS IS AN OPEN-END MORTGAGE WHICH SECURES FUTURE ADVANCES.

THIS MORTGAGE is made this __11TH__ day of __SEPTEMBER__ 20 __07__, between the Mortgagor, __JOHANNES F. PRETORIUS AND MELISA FILIPOS AKA MELISA PRETORIUS, T/T/C__

whose address is __103 OTIS STREET, CAMBRIDGE, MA 02141__
(herein "Borrower"), and Mortgagee, __BENEFICIAL MASSACHUSETTS INC.__,
a corporation organized and existing under the laws of __DELAWARE__, whose address is __1358 HANCOCK STREET, QUINCY, MA 02169__
(herein ("Lender").

The following Paragraph preceded by a checked box is applicable:

☒ WHEREAS, borrower is indebted to Lender in the principal sum of $ __252,447.00__, evidenced by Borrower's Loan Agreement dated __SEPTEMBER 11, 2007__ and any extensions or renewals thereof (including those pursuant to any Renegotiable Rate Agreement) (herein "Note"), providing for monthly installments of principal and interest, including any adjustments to the amount of payments or the contract rate if that rate is variable, with the balance of the indebtedness, if not sooner paid, due and payable on __SEPTEMBER 11, 2037__;

☐ WHEREAS, Borrower is indebted to Lender in the principal sum of $ _____, or so much thereof as may be advanced pursuant to Borrower's Revolving Loan Agreement dated _____ and extensions and renewals thereof (herein "Note"), providing for monthly installments, and interest at the rate and under the terms specified in the Note, including any adjustments in the interest rate if that rate is variable, and providing for a credit limit stated in the principal sum above and an initial advance of $ _____;

TO SECURE to Lender the repayment of (1) the indebtedness evidenced by the Note, with interest thereon including any increases if the contract rate is variable; (2) future advances under any Revolving Loan Agreement; (3) the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Mortgage; and (4) the performance of the covenants and agreements of Borrower herein contained, Borrower does hereby mortgage, grant and convey to Lender and Lender's successors and assigns the following described property located in __CUMBERLAND__ County, State of Maine:

THE LAND IN PEAKS ISLAND, COUNTY OF CUMBERLAND, STATE OF MAINE, DESCRIBED AS FOLLOWS:

THREE CERTAIN LOTS OR PARCEL OF LAND, WITH THE BUILDINGS THEREON, SITUATED ON PEAKS ISLAND WITHIN THE LIMITS OF THE CITY OF PARTLAND, COUNTY OF CUMBERLAND AND STATE OF MAINE, BOUNDED AND DESCRIBED AS FOLLOWS:

FIRST: BEGINNING ON THE SOUTHERLY SIDE OF PRINCE AVENUE, FORMERLY A. STREET, SHOWN ON THE PLAN OF THE HOMESTEAD OF WILLIAM S. TREFETHEN MADE BY CHARLES H. HOWE, AUGUST 1887, AND RECORDED IN CUMBERLAND COUNTY REGISTRY OF DEEDS IN PLAN BOOK 6, PAGE 33 AT THE MOST NORTHERLY CORNER OF THE FOR ADOPTED NUMBER SIX (6) CONVEYED TO ALBERT A. BRABROOK BY DEED DATED SEPTEMBER 28, 1895 RECORDED IN CUMBERLAND COUNTY REGISTRY OF DEEDS BOOK 629, PAGE 365; THENCE EASTERLY BY THE SOUTHERLY SIDE LINE OF SAID PRINCE AVENUE FIFTY (50) FEET TO A POINT; THENCE SOUTHERLY PARALLEL WITH THE EASTERLY SIDE LINE OF SAID LOT NUMBERED SIX (6) AND HOLDING SAID WIDTH OF FIFTY (50) FEET, ONE HUNDRED (100) FEET TO A POINT; THENCE WESTERLY FIFTY (50) FEET TO THE MOST EASTERLY CORNER OF SAID LOT NUMBERED SIX (6); THENCE NORTHERLY BY THE EASTERLY SIDE LINE OF SAID LOT NUMBERED SIX (6) ONE HUNDRED (100) FEET TO THE POINT OF BEGINNING. BEING LOT ADOPTED NUMBER SEVEN (7) ON SAID PLAN.

SECOND: A CERTAIN LOT OR PARCEL OF LAND SITUATED ON SAID

CONTINUED ON EXHIBIT A-LEGAL DESCRIPTION

11-11-05 MTG

ME001401

**EXHIBIT C**

TOGETHER with all royalties, mineral, oil, and gas rights and profits, water rights and stock and all fixtures now or hereafter a part of the property, the improvements now or hereafter erected on the property, and all easements, rights appurtenances and rents, all of which shall be deemed to be and remain a part of the property covered by this Mortgage; and all of the foregoing, together with said property (or the leasehold estate if this Mortgage is on a leasehold) are hereinafter referred to as the "Property."

Borrower covenants that Borrower is lawfully seised of the estate hereby conveyed and has the right to Mortgage, grant and convey the Property, and that the Property is unencumbered, except for encumbrances of record. Borrower covenants that Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest (including any variations in interest resulting from changes in the Contract Rate that may be specified in the Note) on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to paragraph 2. Payments due under the Note and this Mortgage shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Mortgage is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Mortgage be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) electronic funds transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in paragraph 14. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each monthly payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Mortgage or performing the covenants and agreements secured by this Mortgage.

**2. Funds for Escrow Items.** Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under paragraph 5; and (d) Mortgage Insurance premiums, if any. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Mortgage, as the phrase "covenant and agreement" is used in paragraph 7. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under paragraph 7 and pay such amount and Borrower shall then be obligated under paragraph 7 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with paragraph 14 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this paragraph.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 35000), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter (herein "RESPA"); and (b) not to exceed the maximum amount a lender can require under RESPA. As used in this Mortgage, RESPA refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the loan does not qualify as a "federally related mortgage loan" under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a

deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Mortage, Lender shall promptly refund to Borrower any Funds held by Lender.

**3. Application of Payments or Proceeds.** Except as otherwise described in this paragraph 3 or as may be required by the Note and/or applicable law, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under paragraph 2. Such payments shall be applied to each monthly payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Mortgage, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent monthly payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one monthly payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more monthly payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the monthly payments.

**4. Charges; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Mortgage, and leasehold payments or ground rents, if any.

**5. Hazard Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and such other hazards as Lender may require and in such amounts and for such periods as Lender may require.

The insurance carrier providing the insurance shall be chosen by the Borrower subject to approval by Lender; provided, that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Mortgage.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1, 2 and 3 or change the amount of the payments. If under paragraph 19 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

**6. Preservation and Maintenance of Property; Leaseholds.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Mortgage is on a leasehold.

**7. Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Mortgage, or, if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such action as is necessary to protect Lender's interest. If Lender required mortgage insurance as a condition of making the loan secured by this Mortgage, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, at the applicable contract rate, shall become additional indebtedness of Borrower secured by this Mortgage. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

**8. Inspection.** Lender may make or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefore related to Lender's interest in the Property.

**9. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage.

**10. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Mortgage granted by Lender to any successor in interest of Borrower and all other parties who are or who hereafter become secondarily liable shall not operate to release, in any manner, the liability of the original Borrower and Borrower's successors in interest. Lender shall not be required to commence proceedings again such sucessor or refuse to extend time for payment or otherwise modify

amortization of the sums secured by this Mortgage by reason of any demand made by the original Borrower and Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

**11. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 18 hereof. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Mortgage, but does not execute the Note, (a) is co-signing this Mortgage only to mortgage, grant and convey that Borrower's interest in the Property to Lender under the terms of this Mortgage, (b) is not personally liable on the Note or under this Mortgage, and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forbear, or make any other accommodations with regard to the terms of this Mortgage or the Note without that Borrower's consent and without releasing that Borrower or modifying this Mortgage as to that Borrower's interest in the Property.

**12. Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce that charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

**13. Legislation Affecting Lender's Rights.** If enactment or expiration of applicable laws has the effect of rendering any provision of the Note or this Security Instrument unenforceable according to its terms, Lender, at its option, may require immediate payment in full of all sums secured by this Security Instrument and may invoke any remedies permitted by paragraph 19. If Lender exercises this option, Lender shall take the steps specified in the second paragraph of paragraph 18.

**14. Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Mortgage shall be given by delivering it or by mailing such notice by first class or certified mail addressed to Borrower at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by first class or certified mail to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Mortgage shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

**15. Governing Law; Severability.** The applicable law contained in the Note shall control. Where no applicable law is contained therein, the state and local laws of the jurisdiction in which the Property is located shall apply except where such laws conflict with Federal law; in which case, Federal law applies. The foregoing sentence shall not limit the applicability of Federal law to this Mortgage. In the event that any provision or clause of this Mortgage or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Mortgage or the Note which can be given effect without the conflicting provision, and to this end the provisions of this Mortgage and the Note are declared to be severable. As used herein, "costs," "expenses" and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

**16. Borrower's Copy.** Borrower shall be furnished a copy of the Note and of this Mortgage, if requested, at the time of execution or after recordation hereof.

**17. Rehabilitation Loan Agreement.** Borrower shall fulfill all of Borrower's obligations under any home rehabilitation, improvement, repair, or other loan agreement which Borrower enters into with Lender. Lender, at Lender's option, may require Borrower to execute and deliver to Lender, in a form acceptable to Lender, an assignment of any rights, claims or defenses which Borrower may have against parties who supply labor, materials or services in connection with improvements made to the Property.

**18. Transfer of the Property.** If Borrower sells or transfers all or any part of the Property or an interest therein, excluding (a) the creation of a lien or encumbrance subordinate to this Mortgage, (b) a transfer by devise, descent, or by operation of law upon the death of a joint tenant, (c) the grant of any leasehold interest of three years or less not containing an option to purchase, (d) the creation of a purchase money security interest for household appliances, (e) a transfer to a relative resulting from the death of a Borrower, (f) a transfer where the spouse or children of the Borrower become an owner of the property, (g) a transfer resulting from a decree of dissolution of marriage, legal separation agreement, or from an incidental property settlement agreement, by which the spouse of the Borrower becomes an owner of the property, (h) a transfer into an inter vivos trust in which the Borrower is and remains a beneficiary and which does not relate to a transfer of rights of occupancy in the property, or (i) any other transfer or disposition described in regulations prescribed by the Federal Home Loan Bank Board, Borrower shall cause to be submitted information required by Lender to evaluate the transferee as if a new loan were being made to the transferee. Borrower will continue to be obligated under the Note and this Mortgage unless Lender releases Borrower in writing.

If Lender does not agree to such sale or transfer, Lender may declare all of the sums secured by this Mortgage to be immediately due and payable. If Lender exercises such option to accelerate, Lender shall mail Borrower notice of acceleration in accordance with paragraph 14 hereof. Such notice shall provide a period of not less than 30 days from the date the notice is mailed or delivered within which Borrower may pay the sums declared due. If Borrower fails to pay such sums prior to the expiration of such period, Lender may, without further notice or demand on Borrower, invoke any remedies permitted by paragraph 19 hereof.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**19. Acceleration; Remedies. Except as provided in paragraph 16 hereof, or as otherwise required by law, upon Borrower's breach of any covenant or agreement of Borrower in this Mortgage, including the covenants to pay when due any sums secured by this Mortgage, Lender prior to acceleration shall give notice to Borrower as provided in paragraph 14 hereof specifying: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 30 days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Mortgage, foreclosure by judicial proceeding, and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the nonexistence of a default or any any other defense of Borrower to acceleration and foreclosure. If the breach is not cured on or before**

the date specified in the notice, Lender, at Lender's option, may declare all of the sums secured by this Mortgage to be immediately due and payable without further demand and may foreclose this Mortgage by judicial proceeding. Lender shall be entitled to collect in such proceeding all expenses of foreclosure, including, but not limited to, reasonable attorneys' fees, and costs of documentary evidence, abstracts and title reports.

**20. Borrower's Right to Reinstate.** Notwithstanding Lender's acceleration of the sums secured by this Mortgage due to Borrower's breach, Borrower shall have the right to have any proceedings begun by Lender to enforce this Mortgage discontinued at any time prior to entry of a judgment enforcing this Mortgage if: (a) Borrower pays Lender all sums which would be then due under this Mortgage and the Note had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Mortgage; (c) Borrower pays all reasonable expenses incurred by Lender in enforcing the covenants and agreements of Borrower contained in this Mortgage, and in enforcing Lender's remedies as provided in paragraph 19 hereof, including, but not limited to, reasonable attorneys' fees; and (d) Borrower takes such action as Lender may reasonably require to assure that the lien of this Mortgage, Lender's interest in the Property and Borrower's obligation to pay the sums secured by this Mortgage shall continue unimpaired. Upon such payment and cure by Borrower, this Mortgage and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred.

**21. Appointment of Receiver.** Upon acceleration under paragraph 19 hereof or abandonment of the Property, Lender shall be entitled to have a receiver appointed by a court to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorneys' fees, and then to the sums secured by this Mortgage. The receiver shall be liable to account only for those rents actually received.

**22. Release.** Upon payment of all sums secured by this Mortgage, Lender shall release this Mortgage. Borrower shall pay all costs of recordation, if any.

**23. Waiver of Appraisement.** Appraisement of the Property hereby waived or not waived at Lender's option, which shall be exercised at the time judgment is entered in any foreclosure hereof or at any time prior thereto.

**24. Arbitration Rider to Note.** The Arbitration Rider attached to and made part of the Note is hereby incorporated by reference and made part of this Mortgage.

(This space intentionally left blank)

## REQUEST FOR NOTICE OF DEFAULT
## AND FORECLOSURE UNDER SUPERIOR
## MORTGAGES OR DEEDS OF TRUST

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Mortgage to give Notice to Lender, at Lender's address set forth on page one of this Mortgage, of any default under the superior encumbrance and of any sale or other foreclosure action.

IN WITNESS WHEREOF, Borrower has executed this Mortgage.

WITNESS my hand and seal this __11__ day of __SEPTEMBER__ 20__07__.

_____  JOHANNES F. PRETORIUS
JOHANNES F. PRETORIUS           Borrower's Name

_____  MELISA FILIPOS AKA MELISA PRETORIUS
MELISA FILIPOS AKA MELISA PRETORIUS   Borrower's Name

STATE OF ~~MAINE~~ MASS,
__Suffolk__ County ss:                  __Sept 11__, 20__07__

Then personally appeared the above named __Johannes F. Pretorius; Melisa Filipos AKA Melisa Pretorius__ and acknowledged the foregoing instrument to be his/her free act and deed.

Before me,

_____
Notary Public

__Pasquale V. Pino__
Print Name

[Stamp: PASQUALE V. PINO, Notary Public / Attorney, Commonwealth of Massachusetts, My Commission Expires 9-10-10]

STATE OF MAINE,
_____ County ss:            _____, 20___

Then personally appeared the above named _____ and acknowledged the foregoing instrument to be his/her free act and deed.

Before me,

_____
Notary Public

_____
Print Name

———————— (Space Below This Line Reserved for Lender and Recorder) ————————

EXHIBIT A (PAGE 1)

PEAKS ISLAND SITUATED ON THE SOUTHEASTERLY SIDE OF PRINCE
AVENUE, FORMERLY A. STREET, AS SHOWN ON PLAN OF LAND OF
WILLIAM S. TREFETHEN MADE BY C.M. HOWE RECORDED IN
CUMBERLAND COUNTY REGISTRY OF DEEDS IN PLAN BOOK 6, PAGE 33.
BEING LOT ADOPTED NUMBER EIGHT (8) AS SHOWN ON AN EXTENSION
OF SAID PLAN MADE BY JAMES B. JONES, C.E. IN FEBRUARY 1898
AND BOUNDED AND DESCRIBED AS FOLLOWS: BEGINNING AT THE MOST
NORTHERLY CORNER OF LOT NUMBERED SEVEN (7) AS SHOWN ON SAID
REVISED PLAN AND AS ABOVE DESCRIBED; THENCE RUNNING EASTERLY
ON SAID PRINCE AVENUE FIFTY (50) FEET TO A POINT; THENCE
RUNNING SOUTHEASTERLY NINETH-THREE (93) FEET TO A POINT;
THENCE RUNNING SOUTHWESTERLY FIFTY (50) FEET, MORE OR LESS,
TO THE MOST EASTERLY CORNER OF SAID LOT NUMBERED SEVEN 97);
THENCE BY THE NORTHEASTERLY SIDE LINE OF SAID LOT NUMBERED
SEVEN (7) ONE HUNDRED (100) FEET TO THE POINT OF BEGINNING.

THIRD: A CERTAIN LOT OR PARCEL OF LAND SITUATED ON SAID
PEAKS ISLAND ON THE SOUTHEASTERLY SIDE OF A CERTAIN LOT OF
LAND CONVEYED BY SAID WILLIAM S. TREFETHEN TO LAURA A. HALEY
BY DEED DATED SEPTEMBER 28, 1895 AND RECORDED IN THE
CUMBERLAND COUNTY REGISTRY OF DEEDS IN BOOK 629, PAGE 364,
BOUNDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT THE MOST SOUTHERLY CORNER OF SAID LOT OF LAND
ABOVE REFERRED TO; THENCE RUNNING NORTHEASTERLY BY THE
SOUTHEASTERLY SIDE LINE OF SAID LOT FIFTY (50) FEET TO A
POINT; THENCE RUNNING SOUTHEASTERLY IN A CONTINUATION OF THE
NORTHEASTERLY SIDE LINE OF SAID LOT TWENTY (20) FEET; THENCE
RUNNING SOUTHWESTERLY PARALLEL WITH THE FIRST DESCRIBED LINE
FIFTY (50) FEET TO A POINT; THENCE RUNNING NORTH WESTERLY AT
RIGHT ANGLES TO THE FAST DESCRIBED KINE TWENTY (20) FEET TO
THE POINT OF BEGINNING. MEANING AND INTENDING TO CONVEY A
LOT OF LAND FIFTY (50) FEET IN WIDTH ON THE REAR OF AND
ADJOINING THE LOT HERETOFORE CONVEYED TO SAID LAURA A. HALEY
AND EXTENDING BACK TWENTY (20) FEET.

SAID PREMISED HEREIN CONVEYED ARE ALSO FURTHER DESCRIBED AS
BEING LOTS SEVEN (7), EIGHT (8), AND NINE (9) CITY OF
PORTLAND ASSESSORS CHART 91, BLOCK J.
TAX MAP OR PARCEL ID NO.: 91-9-10-J

Received
Recorded Register of Deeds
Sep 13,2007 12:23:09P
Cumberland County
Pamela E. Lovley

return on front ?
Received
Recorded Register of Deeds
Sep 13, 2007 12:23:09PM
Cumberland County
Pamela E. Lovies